UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY MUCHACHIE NYAMWEYA,<br><br>                                    Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden at<br>Otay Mesa Detention Center *et al.*,<br><br>                                    Respondents. | Case No.:  25-cv-3094-BJC-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Before the Court is Jeffrey Muchache Nyameya's ("Petitioner") Motion for Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition").  ECF No. 1. Petitioner also filed a Motion for Temporary Restraining ("TRO").  ECF No.  4. Respondents filed a response that simultaneously addressed the Petition and the TRO, ECF No. 6, and Petitioner filed a traverse.  ECF No. 8.  For the reasons set forth below, the Petition, ECF No. 1, is **GRANTED IN PART AND DENIED IN PART.**

## I.      BACKGROUND

Petitioner is a native and citizen of Kenya.  ECF No. 1 at 6.  He entered the United States since 1999, at age twenty-one, on a non-immigrant student visa.  ECF No. 6 at 2. He attended Alliant International University in San Diego, California.  ECF No. 1 at 7. After earning a degree in Information Systems, he overstayed his visa.  ECF No. 6 at 2.

In 2007, Petitioner was placed in removal proceedings.  ECF No. 1 at 7.  In 2008, he

25-cv-3094-BJC-VET

applied for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* In July 2008, an immigration judge denied his asylum application as untimely but granted withholding of removal and CAT protection with respect to Kenya. *Id.*

On August 27, 2008, Immigration and Customs Enforcement ("ICE") instructed Petitioner to report for his first post-hearing check-in and placed him on an Order of Supervision. *Id.* For the next seventeen years, Petitioner fully complied with the conditions of supervision and reported to ICE annually as required. *Id.* Petitioner appeared for his routine annual check-in on May 1, 2025, and ICE scheduled his next appointment for November 4, 2025. *Id.* at 8.

On November 4, 2025, ICE served Petitioner with a Notice of Revocation of Release, informing him that his Order of Supervision had been revoked because "ICE has determined that [he] can be expeditiously removed from the United States pursuant to the outstanding order of removal against [him]." ECF No. 6-2 at 7. That same day, ICE conducted an informal interview with Petitioner regarding his detention status. ECF Nos. 6 at 3; 6-2 at 10. During the interview, ICE asked Petitioner why he believed he should be permitted to remain in the United States. ECF No. 1 at 8. Petitioner explained that he had recently undergone urethral surgery and had a follow-up appointment scheduled for January 2026. *Id.* at 9. He further advised that he was scheduled for colorectal surgery on December 30, 2025, with a pre-operative appointment on December 4, 2025, to evaluate potentially precancerous growths. *Id.* Petitioner also stated that he is pre-diabetic and must maintain a strict diet. *Id.* Nevertheless, ICE issued a Form I-200, Warrant for Arrest of Alien, and detained Petitioner to effectuate removal to a third country. ECF No. 6-2 at 12. Petitioner has remained detained since November 4, 2025. ECF No. 6 at 3.

On November 10, 2025, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Along with the Petition, Petitioner requested an order to show cause under 28 U.S.C. § 2243. Id. at 6. On November 18, 2025, the Court issued a briefing schedule directing the parties to maintain the status quo pending the scheduled hearing on December 11, 2025. ECF No. 5 at 2. That same day, Petitioner filed

25-cv-3094-BJC-VET

a Motion for a TRO. ECF No. 4. Because the briefing schedule already preserved the status quo, the Motion for a TRO was denied as moot. ECF No. 7. The Court now turns to the pending Petition.

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## III.   DISUCSSION

### A.   Jurisdiction

Under 8 U.S.C. § 1252(g), except as otherwise stated, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Ninth Circuit has made clear, however, that § 1252(g) must be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, at *6, *14–15 (9th Cir. Aug. 27, 2025) (emphasis in original). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *18. Specifically, § 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1032 (9th Cir. 1998). "[The plaintiffs'] objective

3

25-cv-3094-BJC-VET

was not to obtain judicial review of the merits of their . . . proceedings, but rather to enforce their constitutional rights to due process in the context of those proceedings." *Id.* at 1052.

Respondents argue that because Petitioner's detention stems from the government's initiation and execution of removal proceedings, § 1252(g) strips this Court of jurisdiction. ECF No. 6 at 3-4. Petitioner counters that he does not challenge the government's authority to execute his removal order; rather, he challenges (1) the legality of his detention in furtherance of that order; (2) the revocation of his supervised release, and (3) his continued detention. ECF No. 8 at 2.

The Court concludes that it has jurisdiction. Petitioner is not challenging Respondents' decision to execute a removal order, which would bar this Court's review. Instead, he challenges the legality of his detention based on alleged violations of statutory, regulatory, and constitutional duties. *Id.* Such claims fall squarely within the Court's habeas authority. *See Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders."); *accord Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (interpreting 1252(g) to allow jurisdiction over detention challenges).

**B.      Procedural Safeguards Governing Revocation of Order of Supervision**

The Government has promulgated regulations governing both the release of noncitizens subject to a final order of removal and the revocation of such release. *See* 8 C.F.R. §§ 241.4, 241.13. Under § 241.13(i)(2), "[t]he Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Section 241.13(i)(3) further requires that, following revocation, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be provided "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."

4

Petitioner contends that his Order of Supervision could only be revoked by an ICE Executive Associate Director or another properly delegated official, and that ICE failed to comply with this requirement. ECF No. 1 at 14, 29. He also argues that Respondents have not demonstrated that his removal is reasonably foreseeable, as ICE has neither made final arrangements for his removal nor designated a specific country willing to accept him. *Id.* at 29. Petitioner further asserts that he was not provided adequate notice or a meaningful opportunity to respond to the revocation. *Id.*

Respondents contend that Petitioner was detained under 8 C.F.R. § 241.13, which does not require action by a specific delegated official. ECF No. 6 at 10. Respondent also maintains that ICE provided Petitioner with a Notice of Revocation of Release and conducted an informal interview on the same day that he was detained. *Id.* Therefore, the revocation of Petitioner's Order of Supervision was proper and in compliance with applicable regulations. *Id.* The Court addresses each argument in turn.

### i. *Adjudicating Officer*

Petitioner asserts that he was detained under 8 C.F.R. § 241.4(l)(2) and argues that the official who revoked his Order of Supervision lacked authority because the case was not referred to the ICE Executive Associate Director, and the official had not been delegated revocation authority. ECF No. 1 at 9. Respondent counters that Petitioner's Notice of Revocation of Release identifies 8 C.F.R. § 241.13 as the basis for his revocation. ECF No. 6 at 10. That regulation provides that "[t]he Service may revoke an alien's release under this section." 8 C.F.R. § 241.13(i)(2). Under 8 C.F.R. § 1.2, "[s]ervice" includes U.S. Immigration and Customs Enforcement. Accordingly, because the revocation was carried out under § 241.13 by ICE, it was issued by an official with properly delegated authority, in accordance with the regulation, and did not require referral to a specific ICE Executive Associate Director or any additional delegation to be valid.

25-cv-3094-BJC-VET

### ii.   *Notice and Interview*

Subsection 241.13(i)(3) requires that a noncitizen "will be notified of the reasons for revocation of his or her release," and that an informal interview occur "promptly after [the noncitizen's] return to Service custody."  8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3).  Petitioner was detained on November 4, 2025.  ECF No. 6 at 2.  That same day, ICE provided him with written notice of the reasons for revocation, ECF No. 6-2 at 7, and conducted an informal interview. ECF No. 6-2 at 10. During the interview, Petitioner explained that he had recently undergone urethral surgery and had a follow-up appointment scheduled for January 2026.  ECF No. 1 at 9.  He also informed ICE that he was scheduled for colorectal surgery on December 30, 2025, with a pre-operative evaluation on December 4, 2025, due to potentially precancerous growths, and that he is pre-diabetic and must maintain a strict diet.  *Id.*  The record does not indicate that Petitioner was prevented from presenting any relevant information or that ICE declined to consider the information provided.  Based on these facts, the Court concludes that ICE satisfied the regulatory requirements for both notice and an informal interview.

### iii.   *Likelihood of Removability*

Subsection 241.13(i)(2) requires ICE to determine that the detainee is likely to be removed in the reasonably foreseeable future "on account of changed circumstances." According to Petitioner, that standard is not met here because ICE has neither made final arrangements for his removal nor designated a specific country willing to accept him.  ECF No. 1 at 29.  Respondents argue Petitioner is unlikely to succeed on these arguments because he has not been detained for longer than six months, citing *Zadvydas*, 533 U.S. at 701 (holding "[a]fter this 6 month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."). ECF No. 6 at 6.

Some courts agree with Respondents' argument. *See Ghamelian v. Baker*, No. SAG-25-02106, 2025 WL 2049981, at *4 (D. Md. July 22, 2025); (*Zadvydas* claim premature

25-cv-3094-BJC-VET

because petitioner had not been detained for more than six months); *Guerra-Castro v. Parra*, No. 1:25-cv-22487-GAYLES, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025) (same); *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); (*Zadvydas* claim failed because petitioner has not been detained for more than six months).

This Court, however, declines to follow those cases because they ignore case law finding the *Zadvydas* presumption is rebuttable before the six-month mark. *See Medina v. Noem*, ___ F.Supp.3d ___, No. 25-cv-1768-ABA, 2025 WL 2306274, at *6 (D. Md. Aug. 11, 2025) ("The Supreme Court clearly did not envision that courts would entirely step aside and permit six months of detention even when there was no likelihood that a person would be removed in the reasonably foreseeable future."); *Munoz-Saucedo v. Pittman*, ___ F.Supp.3d ___, No. 25-2258 (CPO), 2025 WL 1750346, at *5 (D.N.J. June 24, 2025) ("Although the Supreme Court established a six-month period of presumptively reasonable detention, it did not preclude a detainee from challenging the reasonableness of his detention before such time."); *Trinh v. Homan*, 466 F.Supp.3d 1077, 1092 (C.D. Cal. 2020) ("At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period."); *Ali v. Dep't of Homeland Security*, 451 F.Supp.3d 703, 707 (S.D. Tex. 2020) ("The six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits); *Cesar v. Achin*, 542 F.Supp.2d 897, 903 (E.D. Wis. 2008) (stating there is nothing in *Zadvydas* to "support[ ] the conclusion drawn by many courts that the presumptive legality of detention within the first six months is irrebuttable.")

According to these cases, there is a presumption of reasonableness that attaches to the first six months of detention, but that presumption may be overcome if the detainee can prove their detention is unreasonable. *Cesar*, 542 F.Supp.2d at 903. *See also Munoz-Saucedo*, 2025 WL 1750346, at *6 ("In practical terms, before the six-month period elapses, the government bears no burden to justify detention, and the petitioner must claim

7

and prove, that his removal is not reasonably foreseeable.")  This Court agrees with these cases and concludes that under *Zadvydas* a rebuttable presumption of reasonable detention applies during the first six months of detention, and during that time, Petitioner bears the burden of showing that his detention is unreasonable.

Here, the Court concludes that Petitioner has met his burden of rebutting the presumption of reasonable detention.  Critically, § 241.13(i)(2) permits revocation of supervised release only "on account of changed circumstances" that create a "significant likelihood" of removal in the reasonably foreseeable future. Thus, at the time of revocation, the Government was required to show both that circumstances had materially changed and that those changes made Petitioner's removal reasonably attainable. At the time of Petitioner's revocation, Respondents had not made such a showing. They acknowledge that no country has agreed to accept Petitioner, and they offer only the generalized assertion that they are "working diligently" to identify a receiving country. ECF No. 6-2 at 3. Such vague assurances—unsupported by evidence of changed circumstances, ongoing negotiations, identified prospects, or any affirmative steps toward securing travel documents—fall far short of demonstrating a significant likelihood of removal in the reasonably foreseeable future. In contrast, Petitioner has presented specific, unrebutted facts showing that ICE has no viable removal pathway at this time. ECF No. 1 at 29. Under these circumstances, the Court finds that Petitioner has carried his burden to show that his continued detention is unreasonable.

## C.        Conclusion

For the foregoing reasons, the Court concludes that while ICE complied with the procedural requirements governing written notice and the conduct of the informal interview under 8 C.F.R. § 241.13, Petitioner has nonetheless demonstrated that his continued detention is unlawful. Even within the presumptively reasonable six-month period recognized in *Zadvydas*, Petitioner may rebut that presumption by showing that his removal is not reasonably foreseeable. Here, the record establishes that ICE has taken no concrete steps toward securing travel documents or identifying a country willing to accept

Petitioner, and Respondents offer only generalized assertions of ongoing efforts. In light of this lack of progress and the undisputed evidence that removal is not presently attainable, Petitioner has met his burden of demonstrating that his continued detention is unreasonable.

25-cv-3094-BJC-VET

## IV.  ORDERS

Upon consideration of the petition for writ of habeas corpus, ECF No. 1, and for good cause shown, it is hereby **ORDERED** that:

1. Respondents are hereby **ORDERED** to immediately release the petitioner from the Otay Mesa Detention Center.

2. Respondents are **ENJOINED** from re-detaining Petitioner unless there has been a change in circumstances that creates a reasonable likelihood of his removal in the reasonably foreseeable future.

3. Respondents are further **ENJOINED** from re-detaining Petitioner unless and until they follow the procedural safeguards set forth in 8 C.F.R. §§ 241.4; 241.13.

4. Petitioner's request for additional injunctive relief set forth in the Prayer for Relief, ECF No. 1 at 27, is **DENIED**. [1]

5. The hearing scheduled for December 11, 2025, is **VACATED**.

**IT IS SO ORDERED.**

Dated:  December 10, 2025

_Bryan Cheeks_

Honorable Benjamin J. Cheeks
United States District Judge

---

[1] In his prayer for relief, Petitioner requests an award of costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act. ECF No. 1 at 27. That request is **DENIED without prejudice**. Petitioner's counsel may submit an appropriate EAJA fee application by January 9, 2026.

25-cv-3094-BJC-VET